Jonathan J. Dunn (SBN 192896)
Neelamba J. Molnar (SBN 271319)
**SMTD LAW LLP**
17901 Von Karman Avenue, Suite 500
Irvine, California 92614
949-537-3800
949-537-3822 (f)
jdunn@smtdlaw.com; nmolnar@smtdlaw.com

Attorneys for Plaintiff
GREAT AMERICAN INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>HYM ENGINEERING, INC., a California corporation; ABRAHAM J. JEON, an individual; HISON KIM, an individual, and DOES 1 through 30, inclusive,<br><br>Defendants. | CASE NO. 24-cv-1641<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT – INDEMNITY AGREEMENT;**<br><br>**(2) SPECIFIC PERFORMANCE;**<br><br>**(3) STATUTORY REIMBURSEMENT; and**<br><br>**(4) QUIA TIMET** |

Plaintiff GREAT AMERICAN INSURANCE COMPANY ("GAIC") alleges the following against defendants HYM Engineering, Inc., Abraham J. Jeon, and Hison Kim (collectively, referred to as the "Indemnitors/Defendants" all of whom are jointly and severally liable to GAIC).

/ / /

/ / /

/ / /

- 1 -

GREAT AMERICAN INSURANCE COMPANY'S COMPLAINT

## PARTIES

1. GAIC is a corporation incorporated under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio. GAIC is, and at all relevant times was, qualified and authorized to transact business in the State of California as a surety.

2. Defendant Hym Engineering, Inc. ("HYM") is a corporation incorporated under the laws of the State of California, with its principal place of business in Fullerton, California.

3. Defendant Abraham J. Jeon is an individual who at all relevant times has resided in Buena Park, California.

4. Defendant Hison Kim is an individual who at all relevant times has resided in Buena Park, California.

5. The names and capacities, whether corporate, individual or otherwise, of defendants named in this complaint as DOES 1 through 30, inclusive, are unknown to GAIC. GAIC is informed and believes and thereon alleges that each of the fictitiously named defendants is liable to GAIC on the causes of action herein alleged and, therefore, GAIC sues said defendants by their fictitious names.

6. GAIC is informed and believes and thereon alleges that at all times herein mentioned, the Defendants, and each of them, was an agent, servant, employee, co-conspirator and/or joint venturer of every other of the remaining Defendants, and performed the acts and omissions complained of herein in the course and scope of such agency, service, employment, conspiracy and/or joint venture.

///
///
///
///
///

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because: (i) there is complete diversity of citizenship between GAIC and Defendants, since GAIC is a citizen of the State of Ohio for diversity purposes and the Defendants are all citizens of States other than Ohio, and (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to GAIC's claims occurred within the Central District of California.

## GENERAL ALLEGATIONS

9. GAIC issued multiple performance and payment surety bonds (collectively, the "Bonds") on behalf of HYM, as the bond principal, in connection with multiple construction projects in the State of California.

10. On or about October 2, 2020, to induce GAIC to issue the Bonds, and as partial consideration for the Performance of the Bonds, Indemnitors/Defendants executed an Indemnity Agreement in favor of GAIC under which they promised to completely indemnify and hold GAIC harmless from all damage, loss or expense GAIC incurs as a result of having issued the Bonds. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit "1"** and incorporated herein by this reference.

11. HYM entered into various contracts to construct projects ("Projects") and requested that GAIC furnish the Bonds for these Projects. Relying on, among other things, the Indemnitors/Defendants' promises contained in the Indemnity Agreement, GAIC issued the Bonds.

///
///
///
///

A LIMITED LIABILITY PARTNERSHIP

- 3 -

GREAT AMERICAN INSURANCE COMPANY'S COMPLAINT

HYM is in default of its contractual obligations on several of the Projects, in that, among other things, HYM cannot fulfill its obligation to pay its subcontractors and suppliers, which has resulted, and will continue to result, in GAIC incurring substantial losses, costs and expenses as a result of having issued the Bonds, which losses are all recoverable under the express terms of the Indemnity Agreement and California law.

12. To date, GAIC has investigated the claims on the Bonds and has paid out and suffered a loss of $ 1,720,764.85 as a result of HYM's failure and inability to satisfy its obligations on the Projects. More losses are expected.

13. GAIC may receive additional claims, and Indemnitors/Defendants are obligated to fully indemnify and reimburse GAIC for any other losses under the Indemnity Agreement.

14. HYM's financial inability to pay its subcontractors and suppliers has resulted in GAIC hiring legal counsel and consultants to assist GAIC in its investigation of the merits of each of the Bond claims. In addition to the principal amount of $1,720,764.85, the Indemnitors/Defendants are obligated to indemnify GAIC for GAIC's attorney fees, legal expenses, costs of court, and other expenses incurred as a result of the bond claims as well as those incurred in the prosecution of this action, under the express terms of the Indemnity Agreement.

15. As of the date of this filing, the Indemnitors/Defendants, and each of them, refuse to satisfy and discharge their obligation to indemnify and hold GAIC harmless under the Indemnity Agreement.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract –Indemnity Agreement -
### Against the Indemnitors/Defendants and DOES 1-30)

16. GAIC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

/ / /

17. On October 2, 2020, Indemnitors/Defendants executed an Indemnity Agreement in favor of GAIC.

18. The Indemnitors/Defendants have failed, and continue to fail to collateralize, exonerate, indemnify and hold GAIC harmless from and against all loss as a result of having issued the Bonds, which are the Indemnitors/Defendants' express obligations under the clear and unambiguous terms of the Indemnity Agreement.

19. The Indemnitors/Defendants have failed and continue to fail to secure GAIC's discharge of its obligations under the Bonds as required under the clear and unambiguous terms of the Indemnity Agreement.

20. GAIC has performed, or has been excused from performing, all of the terms, covenants and conditions on its part to be performed under the Indemnity Agreement, if any.

21. GAIC has incurred and will continue to incur losses as a result of the Indemnitors/Defendants' material breaches of the Indemnity Agreement.

22. As a result of the Indemnitors/Defendants' material breaches of the Indemnity Agreement, GAIC has suffered damages in the principal amount of $1,720,764.85.

23. Because the Indemnitors/Defendants have breached their obligations under the Indemnity Agreement, GAIC has been forced to retain counsel to enforce its rights under the Indemnity Agreement and otherwise assist with the investigation and resolution of claims against the Bonds and in this civil action. In addition to the principal amount of $1,720,764.85, the Indemnitors/Defendants are obligated to indemnify GAIC for GAIC's attorney fees, legal expenses, costs of court, and other expenses incurred as a result of the bond claims as well as those incurred in the prosecution of this action, under the express terms of the Indemnity Agreement.

///

## SECOND CLAIM OF RELIEF

### (Specific Performance Against Indemnitors/Defendants and DOES 1-30)

24. GAIC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

25. GAIC agreed to extend surety credit in reliance on, among other things, Indemnitors/Defendants' promise and agreement to deposit collateral with GAIC when requested to do so by GAIC.

26. GAIC's remedy at law is inadequate in that GAIC cannot be adequately relieved by pecuniary compensation because GAIC is exposed to a liability that is not yet liquidated.

27. By reason of the foregoing, GAIC is entitled to specific performance of Indemnitors/Defendants' obligation to deposit collateral with GAIC. GAIC requests that the Court compel the Indemnitors/Defendants to deliver to GAIC cash or collateral acceptable to GAIC.

28. GAIC further requests that the Court compel the Indemnitors/Defendants to provide GAIC immediate access to their books, records, accounts, databases, and other documents and information in order to allow GAIC to investigate claims on the Bonds.

## THIRD CLAIM FOR RELIEF

### (Statutory Reimbursement Against HYM and DOES 1-30)

29. GAIC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

30. GAIC is informed and believes and thereon alleges that under California Civil Code section 2847, if a surety satisfies a principal's obligation, or any part thereof, whether with or without legal proceedings, the principal is obligated to reimburse the surety for all disbursements, including, but not limited to, attorneys' fees, costs and other expenses.

///

31. GAIC is informed and believes and thereon alleges that as a result of GAIC having issued the Bonds, GAIC has incurred damages suffered damages in the principal amount of $1,720,764.85 to resolve valid claims against the Bonds.

32. Under California Civil Code section 2847, HYM and DOES 1 through 30 are now required to reimburse GAIC.

## FOURTH CLAIM OF RELIEF

### (*Quia Timet* Against Indemnitors/Defendants and DOES 1 -30)

33. GAIC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

34. The Indemnitors/Defendants, and each of them, are obligated under the established and recognized equitable doctrine of *Quia Timet* to post collateral security with GAIC to protect GAIC from for all losses and expenses to be incurred by GAIC as a consequence of having issued the Bonds.

35. GAIC is informed and believes and thereon alleges that Indemnitors/Defendants will attempt to avoid their obligations to indemnify and hold GAIC harmless under the terms of the Indemnity Agreement by transferring and conveying their assets to satisfy obligations other than those covered by the Bonds and the Indemnity Agreement.

36. GAIC has no adequate remedy at law for the injuries currently being suffered. If the Indemnitors/Defendants are not immediately enjoined from transferring their assets, the assets will be disposed of permanently, and the Indemnitors/Defendants will render themselves insolvent, to the severe and irreparable prejudice of GAIC such that judgment for monetary damages would be of no value.

37. As a proximate result of the conduct of Indemnitors/Defendants, and each of them, GAIC has been or will be damaged so long as said Indemnitors/Defendants are able to circumvent their obligations to GAIC under the Indemnity Agreement by transferring their assets to avoid their obligations.

38. The Indemnitors/Defendants, and each of them, are obligated under the Indemnity Agreement to provide information and documentation deemed necessary by GAIC to investigate claims on the Bonds, and they failed to do so upon request from GAIC.

39. GAIC is entitled to a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining Indemnitors/Defendants, and each of them, as well as their agents, servants, employees, attorneys and all persons acting under, in concert with, or for them, from further transferring assets without the express written consent and order of this Court.

## PRAYER FOR RELIEF

WHEREFORE, GAIC prays for judgment in this action against Defendants as follows:

## FIRST CLAIM FOR RELIEF AGAINST INDEMNITORS/DEFENDANTS AND DOES 1-30

a) Compensatory damages in an amount to be proven at trial, presently ascertainable principal amount of $1,720,764.85;

b) Attorneys' fees and legal expenses pursuant to contract according to proof;

c) Costs of court incurred herein; and

d) Such other relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF AGAINST INDEMNITORS/DEFENDANTS AND DOES 1-30

a) An order for specific performance providing:

1. That Indemnitors/Defendants be required to specifically perform their obligation to deposit collateral with GAIC in the minimum amount of $1,720,764.85;

///

///

2. That Indemnitors/Defendants be required to specifically perform their obligation to provide GAIC immediate access to their books, records, accounts, databases, and other documents an information in order to allow GAIC to investigate claims on the Bonds;

3. For attorneys' fees and costs incurred herein; and

4. For such other relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF AGAINST
## HYM AND DOES 1-30

a) Compensatory damages in an amount to be proven at trial, presently ascertainable principal amount of $1,720,764.85;

b) Costs of court incurred herein; and

c) Such other relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF AGAINST
## INDEMNITORS/DEFENDANTS AND DOES 1-30

a) For a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendants from transferring assets;

b) A preliminary injunction and permanent injunction for the following relief:

5. Defendants be required to specifically perform their obligation to deposit collateral with GAIC in the minimum amount of $1,720,764.85;

6. Defendants be enjoined and restrained from selling, transferring disposing, liening, encumbering, or impairing their assets and property;

7. Defendants be required to provide GAIC immediate access to their books, records, accounts, databases, and other documents an information in order to allow GAIC to investigate claims on the Bonds and prevent Defendants from selling, transferring disposing, liening, encumbering, or impairing their assets and property;

///

1     c)     Attorneys' fees and costs incurred herein; and

2     d)     Such other relief as the Court deems just and proper.

Dated: July 26, 2024         **SMTD LAW LLP**

By:    */s/ Neelamba J. Molnar*
         Jonathan J. Dunn
         Neelamba J. Molnar
         Attorneys for Plaintiff
         GREAT AMERICAN INSURANCE COMPANY

# EXHIBIT "1"



# AGREEMENT OF INDEMNITY

THIS AGREEMENT OF INDEMNITY, made and entered into this ___1st___ day of ___October___, 20 _20_ by:

Business Entities: (Corporate/LLC/Partnership/Other Entity)

1. Name: HZU Engineering, Inc.                                                Tax ID: ▮▮▮▮
   & Address: 1559 W. Commonwealth Ave., Fullerton, CA 92833

Individuals/Trusts:

1. Name: Abraham J. Joon                                                      SSN: ▮▮▮▮
   & Address: 5240 Somerset St, Buena Park, CA 90621

2. Name: Hison Kim                                                            SSN: ▮▮▮▮
   & Address: 5240 Somerset St. Buena Park, CA 90621

(hereinafter called Undersigned), and GREAT AMERICAN INSURANCE COMPANY, its Affiliates (including, but not limited to Great American Alliance Insurance Company, Great American Insurance Company of New York and Great American Assurance Company), and any person or entity which they may procure to act as co-surety or reinsurer on any Bonds on behalf of the Undersigned at the request of any of the above (hereinafter called Surety).

## WITNESSETH

WHEREAS, the Undersigned may desire or be required to give or procure surety bonds, undertakings, bid or commitment letters or instruments of guarantee, and to renew, continue or substitute the same, hereinafter called Bonds, for itself or any present or future wholly or partially owned subsidiary or any subsidiary of a subsidiary of the Undersigned; or joint ventures or partnerships in combination with each other, now in existence or which may hereafter be created or acquired; or for any other entity upon written request of the Undersigned, whether in its own name or as co-adventurer with others; and/or the Undersigned has a substantial, material and beneficial interest in the obtaining of the Bond(s) or in the Surety's renewing the Bonds(s) or in the Surety's refraining from canceling said Bond(s); and

WHEREAS, at the request of the Undersigned and upon the express understanding that this Agreement of Indemnity (hereinafter Agreement) should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procured to be executed, Bonds on behalf of the Undersigned.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is expressly acknowledged by the Undersigned, the Undersigned for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally and/or collectively, hereby covenant and agree with the Surety, its successors and assigns, as follows:

## PARTIES

FIRST: This Agreement binds the Undersigned and their heirs, personal representatives, successors and assigns thereof, jointly and severally, to Surety in connection with all Bond(s) previously or in the future executed, provided or procured by Surety. Unless otherwise agreed by Surety in writing, this Agreement is specifically intended to and shall bind any new legal entities created by or affiliated with the Undersigned, including any successor legal entities that may be created by any of the Undersigned. The Undersigned shall promptly notify Surety of the creation of any legal entity (corporation, LLC, partnership, trust, or other structure) and shall cooperate fully with Surety to ensure that Surety realizes the benefits of this Agreement. The Undersigned acknowledge that their execution of this Agreement and their undertaking of indemnity was not made in reliance upon any representation concerning the financial condition, viability or responsibility, of any of the Undersigned or the competence of any of the Undersigned to perform. Surety shall be entitled to enforce the obligations of this Agreement directly against any one or more of the Undersigned without necessity of first proceeding against any other Undersigned.

## INDEMNITY/EXONERATION

SECOND: The Undersigned, jointly and severally, shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of being requested to execute or procure, or having executed or procured the execution of Bonds on behalf of any of the Undersigned, (2) By reason of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. The amount of such payment to the Surety by the Undersigned shall be determined by the Surety and the Surety's demand for payment hereunder may, at the Surety's option, be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Undersigned. The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any liability, loss or expense for which the Undersigned would be obligated to indemnify the Surety under the terms of this Agreement. The Surety shall have no obligation to invest or to provide a return on the payment or any other collateral deposited with the Surety. The Undersigned shall be entitled to the refund of any unused portion of

the payment upon termination of the liability of the Surety on all Bonds and the performance by the Undersigned of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by registered or certified mail, by

facsimile transmission, or by personal service to the Undersigned at the addresses stated herein, or at the addresses of the Undersigned last known to the Surety, regardless of whether such demand is actually received.

The Undersigned acknowledge that the failure of the Undersigned to deposit with the Surety, immediately upon demand, the sum demanded by the Surety as payment shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Undersigned agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Undersigned under this Agreement including the obligation to pay to the Surety the sum demanded and hereby waive any claims or defenses to the contrary. In the event of any payment of any kind by the Surety, the Undersigned further agree that in any accounting between the Surety and the Undersigned, the Surety shall be entitled to charge for any and all disbursements made by the Surety in good faith in and about the matters herein contemplated by this Agreement under the belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers, invoices, an affidavit or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the Undersigned's liability to the Surety.

Each of the Undersigned authorizes and empowers any attorney in any state of the United States, at the request of Surety, to waive the issuing and service of process and to appear for and confess judgment against any of the Undersigned for any sum or sums due under this Agreement, together with the costs of suit, without stay of execution, waiving inquisition and condemnation of real estate; and to release all errors and waive all right of appeal and stay of execution on behalf of the Undersigned.

## ASSIGNMENT

THIRD: The Undersigned hereby consenting, will assign, transfer and set over, and do hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Undersigned to the Surety, whether heretofore or hereafter incurred, the assignment to become effective retroactive to the date of the first Bond, but only in the event of (1) any abandonment, forfeiture or breach or alleged breach of any contracts referred to in the Bonds or of any breach or alleged breach of any Bonds; or (2) any breach or alleged breach of the provisions of any of the paragraphs of this Agreement; or (3) a default or alleged default in discharging such other indebtedness or liabilities when due; or (4) any assignment by the Undersigned for the benefit of creditors, or of the appointment or of any application for the appointment of a receiver or trustee for the Undersigned whether insolvent or not; or (5) any proceeding which deprives the Undersigned of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) the Undersigned's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisonment if the Undersigned be an individual:

(a) All the rights of the Undersigned in, and growing in any manner out of the Bonds or any contracts referred to in the Bonds;

(b) All the rights, title and interest of the Undersigned in and to all machinery, equipment, vehicles, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites;

(c) All the rights, title and interest of the Undersigned in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts;

(d) All actions, causes of actions, claims and/or the proceeds therefrom and any demands whatsoever which the Undersigned may have or acquire against any party, including but not limited to owners, obligees, subcontractors, laborers or materialmen, architects, engineers or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any party including, but not limited to, prime contractors, subcontractors, laborers, or materialmen;

(e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Undersigned has an interest;

(f) any and all accounts receivable, marketable securities, rents, proceeds of sale, instruments, chattel paper, letters of credit, documents of title, bills of lading, federal tax refunds, state and local tax refunds, furniture and fixtures, inventory, and general intangibles;

(g) any and all policies of insurance;

(h) all intellectual property, including licenses, patents, copyrights, and trade secrets;

(i) all limited or general partnership interests.

The Undersigned agree that the Surety may add such schedules to this Agreement as it deems advisable, describing more specifically items of security covered by this Assignment.

Notwithstanding the foregoing, Undersigned further agree to execute and deliver to the Surety, upon its request, such further or additional instruments as may be necessary or desirable in the Surety's sole and absolute discretion to permit or facilitate either the filing of this Agreement as a Financing Statement and/or Security Agreement, or the filing of separate Financing Statements and/or Security Agreements, based upon this Agreement, in such states, counties, and/or other places as the Surety may deem necessary or advisable.

## TRUST FUNDS

FOURTH: Undersigned covenant and agree that all funds received by them, or due or to become due under any contract covered by any Bond are trust funds whether in the possession of the Undersigned or another, for the benefit of all parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond(s) and/or for the benefit of, payment to or reimbursement of the Surety for any liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this Agreement. If the Surety discharges any such obligation, the Surety shall be entitled to assert the claims of any such party to the trust funds. The Undersigned shall, upon demand of the Surety and in implementation of the trust, open an account or separate accounts with a bank designated by Surety, which account(s) shall be designated as a trust account(s) for the deposit of such trust funds and the Undersigned shall deposit therein all monies received pursuant to said contract. Withdrawals from such account(s) shall be by check or other instrument signed by the Undersigned and countersigned by a representative of the Surety. Notwithstanding anything to the contrary herein, this dedication may be implemented in any other manner provided at law or in equity.

## UNIFORM COMMERCIAL CODE

FIFTH: This Agreement or a copy, photographic, xerographic or other reproduction or copy of this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. Undersigned also agree that the failure of the Surety to file this Agreement shall not release or excuse any of the obligations of the Undersigned under this Agreement.

## TAKEOVER

SIXTH: In the event of any breach, delay or default asserted by the obligee in connection with any Bond or any contract covered by the Bonds, or if the Undersigned has suspended or ceased work on any contract or contracts covered by any Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Undersigned's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Undersigned, or the appointment of a receiver or trustee for the Undersigned or the property of the Undersigned, or in the event of an assignment for the benefit of creditors of the Undersigned, or if any action is taken by or against the Undersigned under or by virtue of the U.S. Bankruptcy Code, or should reorganization or arrangement proceedings be filed by or against the Undersigned under said Act, or if any action is taken by or against the Undersigned under the insolvency laws of any state, possession, or territory of the United States the Surety shall have the right, but not the obligation, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any Bonds, and at the expense of the Undersigned to complete or arrange for the completion of the same, and the Undersigned shall promptly upon demand pay to the Surety all losses, costs, and expenses so incurred.

## JOINT CHECKS

SEVENTH: In the event of (1) any breach or alleged breach of this Agreement; (2) any breach or alleged breach of any contract covered by any Bond(s); or (3) any other event(s) that might expose Surety to liability under the Bond(s) the Undersigned agree that upon written request of the Surety, the Undersigned shall direct any obligee or project owner as may be designated by Surety to deposit any further progress payments or retainage payments in relation to the contract covered by the Bond(s) to a specified bank account, or at the Surety's option to make the check(s) payable jointly to the Undersigned and the Surety, or at the Surety's option to make check(s) payable to the Undersigned and any other payee designated by the Surety.

## CHANGES

EIGHTH: The Surety is authorized and empowered, without notice to or knowledge of the Undersigned, to assent to any change whatsoever in the Bonds, and or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Undersigned shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of the Undersigned. Each of the Undersigned represent and warrant to Surety that it is their responsibility to remain informed and apprised of a principal's business activities, and that Surety has no obligation to inform the Undersigned of any change in any aspect of a principal's business activities or financial affairs.

## ADVANCES

NINTH: The Surety, in its sole discretion, is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Undersigned any money, as the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds, and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Undersigned, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Undersigned to the Surety when due, shall be presumed to be a loss by the Surety for which the Undersigned shall be responsible, notwithstanding that said money or any part thereof might not be so used by the Undersigned.

## BOOKS AND RECORDS

TENTH: At any time, and until such time as the liability of the Surety under any and all Bonds is terminated, the Surety shall have the right to examine and copy the books, records, and accounts of the Undersigned; and any bank depository, materialman, supply house, or other person, firm or corporation, when requested by the Surety, is hereby authorized and directed by the Undersigned to furnish the Surety with any information requested including, but not limited to, the status of the work under contracts being performed by the Undersigned, the condition of the performance of such contracts and payments of accounts. The Undersigned agree to provide any additional releases, requests, waivers or any other documents required in order to allow the Surety access to the requested information.

## DECLINE EXECUTION

ELEVENTH: The Surety may, at its option and sole discretion, decline to execute any Bond, terminate any Bond in accordance with the terms of such Bond, or rescind any Bond after its issuance and prior to its effective date. The Undersigned agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute Bid, Proposal Bonds or Bid or Commitment Letters, Surety shall have the right at its option and sole and unfettered discretion to decline to execute any or all of the Bonds that may be required in connection with any award that may be made under the proposal for which the Bid, Proposal Bond or Bid or Commitment Letter is given and such declination shall not diminish or alter the liability of the Undersigned to the Surety under this Agreement that may arise by reason of having executed the Bid, Proposal Bond or Bid or Commitment Letters. The Undersigned acknowledge that the Surety makes no representation as to the validity or acceptability of any Bond to any person, firm or entity of whatever sort or kind under any contract, and agree that the Undersigned shall have no claim against the Surety arising out of or in any manner relating to the failure or refusal of any person, firm or entity of whatever sort or kind to award any contract to any Undersigned party, or to accept any Bond executed and delivered by the Surety, or that the Surety has been requested to execute and deliver.

## NOTICE OF EXECUTION

TWELFTH: The Undersigned hereby waive notice of the execution of Bonds and of the acceptance of this Agreement, and

the Undersigned hereby waive all notice of any default, or any other events or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under Bonds, and any all liability on their part hereunder, to the end and effect that, the Undersigned shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might otherwise have been or be entitled, and notwithstanding any defenses they might otherwise have been entitled to assert.

## HOMESTEAD

THIRTEENTH: The Undersigned hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession.

## SETTLEMENT

FOURTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit, arbitration proceeding or judgment upon the Bonds. The liability of the Undersigned to the Surety under this Agreement shall extend to and include all amounts paid by the Surety under the belief that: (1) the Surety was or might be liable therefor; or (2) such payments were necessary or advisable to protect any of the Surety's rights or to avoid or lessen Surety's liability or alleged liability. Further, the liability of the Undersigned to the Surety under this Agreement shall include interest from the date of Surety's payment at the maximum rate permitted in the jurisdiction in which this Agreement is enforced, or is enforceable. Further the Surety shall have the right to adjust, settle, prosecute, compromise or pursue recovery in connection with any claim, demand, suit, arbitration proceeding or judgment in connection with any contract whether bonded or not, or in connection with any matters that are the subject of Paragraph 3 "Assignment" of this Agreement.

## SURETIES

FIFTEENTH: In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

## SUITS

SIXTEENTH: Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action against any or all of the Undersigned shall not prejudice or bar the bringing of other suits upon other causes of action, or the bringing of other suits, or the recovery of judgment or judgments against the Undersigned, whether theretofore or thereafter arising. The Undersigned agree that each Undersigned executing this Agreement is an agent for all of the other Undersigned executing this Agreement for the purpose of accepting service of any process in the jurisdiction in which the Undersigned accepting the process resides, is domiciled, is doing business or is found. In the event that Surety shall file suit at law or in equity to enforce the terms of this Agreement, Surety shall be entitled to recover its own attorney's fees and expenses in connection with such suit. The Surety is hereby expressly authorized by the Undersigned to compromise or settle any claim based upon this Agreement with any one or more of the Undersigned individually, and such compromise or settlement shall not affect the liability of any non-settling Undersigned to the Surety.

## OTHER INDEMNITY

SEVENTEENTH: That the Undersigned shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Undersigned, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, or obtained or recovered other judgments from the Undersigned or others, it being expressly understood and agreed by the Undersigned that any and all other rights which the Surety may have or acquire against the Undersigned and/or others under any such other or additional agreements of indemnity, judgments, or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement. None of the Undersigned shall make any defense to the enforcement of this Agreement based on the execution of other agreements or related to the addition or the release of any of the Undersigned, and each of the Undersigned explicitly confirms its joint and several liability for Bonds issued by the Surety as provided in this Agreement. Each of the Undersigned further waive and subordinate all rights of indemnity, subrogation and contribution against each other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full.

## INVALIDITY

EIGHTEENTH: In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the other parties executing the same, but each and every other party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Undersigned that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Undersigned or others whether by the terms of any other agreement or by operation of law or otherwise.

## ATTORNEY IN FACT

NINETEENTH: The Undersigned hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Undersigned assigned, transferred and set over to the Surety in this Agreement, and in the name of the Undersigned to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Undersigned hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

## TERMINATION

TWENTIETH: The Undersigned expressly recognize and agree that this Agreement is a continuing obligation applying to and indemnifying the Surety as to any and all Bonds heretofore or hereafter executed by the Surety (whether contracting alone or as a co-adventurer) until this Agreement shall be fully and finally terminated in the manner herein provided. No change in the marital, employment, or economic status or condition of any of the Undersigned shall in any manner abrogate, waive, or alter any provision

of this paragraph or this Agreement. This Agreement may only be terminated by one or more of the Undersigned by written notice sent by registered mail addressed to the Bond Department of the Surety at its then-current administrative office. Such notice shall be effective twenty (20) days after Surety has confirmed in writing its receipt of the notice of termination. Any such notice of termination shall only apply to the entity or individual sending the notice, and shall not operate to modify, bar, or discharge such entity or individual as to the Bonds that may have been executed (or for which application is or has been made) before the effective date of termination, nor shall it prejudice or affect any right, claim, demand or cause of action which the Surety has or may thereafter have or acquire against the other parties to this Agreement of Indemnity.

## MODIFICATIONS

TWENTY FIRST: This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

## SEVERABILITY

TWENTY SECOND: If any provision or provisions of the Agreement shall be void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be voided or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

## GENERAL PROVISIONS

A) The Undersigned will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Undersigned shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

B) The Undersigned agree that Surety may add additional parties or release parties to this Agreement by Rider, Endorsement, Amendment or by any other means acceptable to Surety, and the Undersigned shall cooperate with Surety in accordance with Paragraph 1 "Parties" of this Agreement. Further, the Undersigned agree that the release of any party to this Agreement shall not release any other party. The failure of any party to perform any of its obligations under this Agreement shall not excuse the performance of any other party under this Agreement.

C) Each and every right, remedy, power and/or entitlement afforded the Surety pursuant to this Agreement, and/or in any other agreements among the Surety and the Undersigned, or by law, equity or statute, shall be cumulative, and the exercise by the Surety of any right, power or remedy shall not preclude the Surety's simultaneous or subsequent exercise of any and all other rights, powers and/or remedies. No failure or delay by the Surety to exercise any right, power or remedy provided pursuant to this Agreement shall impair or be construed to be a waiver of the Surety's ability or entitlement to exercise any other right, power or remedy. The exercise of, or the failure to exercise any right, power or remedy at any time, whether derived from this Agreement, any other agreement,under law or in equity, shall not be deemed to be an election of remedy or a waiver of any other right, power or remedy.

D) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Undersigned agree that there have been no oral or other agreements of any kind as a condition precedent or to induce the execution and delivery of this Agreement by any party.

E) Undersigned hereby authorize the Surety to settle or compromise any claim based upon this Agreement with any Undersigned individually, or with some but fewer than all Undersigned and such settlement or compromise shall not affect the liability of any other parties to this Agreement.

F) Throughout this Agreement, all references in the singular shall also refer to the plural, and vice versa, all references in the conjunctive shall also refer to the disjunctive, and vice versa, and all references in the past tense shall also refer to the present or future tense, and vice versa.

G) The Undersigned shall give Surety prompt notice of any claim, demand, suit, arbitration proceeding or other action which purports to be instituted or asserted on or against any Bond and shall fully cooperate with the Surety in the defense thereof.

H) The Undersigned agree that no right, remedy, power or entitlement granted to Surety pursuant to this Agreement creates any fiduciary duty to the Undersigned. The Undersigned agree and understand that a fiduciary duty owed from Surety to the Undersigned would be inconsistent with the purposes of this Agreement.

By executing this Agreement you are bound jointly and severally to the Surety with respect to all Bonds executed, provided or procured or to be executed, provided or procured by Surety at any time in behalf of any of the Undersigned, and with respect to all undertakings of this Agreement.

The Undersigned hereby authorize the Surety to obtain credit reports and histories and to confirm bank balances claimed, and all other items on any balance sheet or income statement furnished until all liability of the Surety for any suretyship or claim obligations expire.

THE UNDERSIGNED REPRESENT TO THE SURETY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.

IN WITNESS WHEREOF, we have signed this Agreement of Indemnity effective as of the day and year first above written.

Signatures and Acknowledgements:

1. **Business Entity:** HYM Engineering, Inc.

Witness/Attest:                                    HYM Engineering, Inc.

By: _____                          By: _____
                                                   (Name & Title)
Abraham J. Jeon, Secretary                         Abraham J. Jeon, President

## ACKNOWLEDGMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF   California
                                    } ss.
COUNTY OF   Orange

On  Oct. 2, 2020 , before me,  Moon C. Lee
       (Date)                      (Notary)

personally appeared  Abraham J. Jeon                   who proved to me on the basis of
                        (Name of Signer)

satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument (an Agreement of Indemnity) and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of this state that the foregoing paragraph is true and correct.

WITNESS my hand and official seal. _____
                                   (Signature of Notary)

My commission expires on  Nov. 4, 2021

> MOON C. LEE
> NOTARY PUBLIC - CALIFORNIA
> COMMISSION # 2217240
> ORANGE COUNTY
> My Comm. Exp. November 4, 2021

1. **Individual/Trust:** Abraham J. Jeon

By: _____                          By: _____
(Name)                                             (Name)
Abraham J. Jeon                                    Darius Lee

## ACKNOWLEDGMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF   California
                                    } ss.
COUNTY OF   Orange

On  Oct. 2, 2020 , before me,  Moon C. Lee
       (Date)                      (Notary)

personally appeared  Abraham J. Jeon                   who proved to me on the basis of
                        (Name of Signer)

satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument (an Agreement of Indemnity) and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of this state that the foregoing paragraph is true and correct.

WITNESS my hand and official seal. _____
                                   (Signature of Notary)

My commission expires on  Nov. 4, 2021

> MOON C. LEE
> NOTARY PUBLIC - CALIFORNIA
> COMMISSION # 2217240
> ORANGE COUNTY
> My Comm. Exp. November 4, 2021

2. Individual/Trust: Hison Kim

By: _____  By: _____
   (Name)                     (Name)
   Hison Kim                  Darius Lee

## ACKNOWLEDGMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California
                            } SS:
COUNTY OF Orange

On Oct. 2, 2020, before me, Moon C. Lee
   (Date)                   (Notary)

personally appeared Hison Kim _____ who proved to me on the basis of
                   (Name of Signer)

satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument (an Agreement of Indemnity) and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of this state that the foregoing paragraph is true and correct.

WITNESS my hand and official seal. _____
                                   (Signature of Notary)

My commission expires on Nov. 4, 2021

> MOON C. LEE
> NOTARY PUBLIC - CALIFORNIA
> COMMISSION # 2217240
> ORANGE COUNTY
> My Comm. Exp. November 4, 2021

SURETY _____          GREAT AMERICAN INSURANCE COMPANY

Witness: _____        By: _____
                                          (Name & Title)
                                          Michael Vanasopha, Attorney-In-Fact

## ACKNOWLEDGMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California
                            } SS:
COUNTY OF Orange

On _____, before me, Kathy B. Wittler
   (Date)                   (Notary)

personally appeared Michael Vanasopha _____ who proved to me on the basis of
                   (Name of Signer)

satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument (an Agreement of Indemnity) and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of this state that the foregoing paragraph is true and correct.

WITNESS my hand and official seal. _____
                                   (Signature of Notary)

My commission expires on _____

see attached acknowledgement

F9680V - 08/16                              Page 7 of 7

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**   CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of ORANGE )

On AUGUST 12, 2022 before me, HARRISON YOSHIOKA, NOTARY PUBLIC,
　　　　Date　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared MICHAEL VANASOPHA
　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Signature of Notary Public
HARRISON YOSHIOKA, NOTARY PUBLIC

[Notary Seal: HARRISON YOSHIOKA, Notary Public - California, Los Angeles County, Commission # 2259740, My Comm. Expires Sep 25, 2022]

Place Notary Seal Above

――――――――――――――― OPTIONAL ―――――――――――――――
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _____ Document Date: AUGUST 12, 2022
Number of Pages: _____ Signer(s) Other Than Named Above: NONE

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: MICHAEL VANASOPHA
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual   ☒ Attorney in Fact
☐ Trustee   ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual   ☐ Attorney in Fact
☐ Trustee   ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907